UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LINDA RUSH                                            PLAINTIFF

VS.                          CIVIL ACTION NO. 3:25-CV-6-TSL-ASH

MARCUS THOMPSON, IN HIS
INDIVIDUAL AND OFFICIAL
CAPACITIES, AND JACKSON
STATE UNIVERSITY                                      DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Defendants Jackson State University (JSU) and Marcus

Thompson, in his official capacity, have moved to dismiss under

Rule 12(b)(6) of the Federal Rules of Civil Procedure, and

Marcus Thompson has separately moved to dismiss the claims

against him in his individual capacity on qualified immunity and

other grounds. Plaintiff Linda Rush has responded to both

motions, and the court, having considered the parties' memoranda

of authorities concludes the motions should be granted in part

and denied in part, as set forth below.

<u>Plaintiff's Complaint</u>

In August 2023, plaintiff, long-time employee of JSU, was

promoted from her position as JSU's Executive Director of

Admissions to Interim Vice President for the Division of

Enrollment Management. On January 15, 2024, two months after

defendant Marcus Thompson was installed as president of JSU, he

named Alford-Windfield, a male under the age of forty, as Vice

President for Enrollment Management and demoted plaintiff to her former position as Executive Director of Admissions.  He did this without posting the position of Vice President for Enrollment Management and with full knowledge that plaintiff wanted the position.

Plaintiff alleges that despite her demotion, she continued to perform, and perform well, the duties of Vice President for Enrollment Management, in addition to her own duties as Executive Director of Admissions.  Yet two months later, on March 21, plaintiff was informed that she was terminated, effective immediately.  Alford-Windfield, who provided her with notice of the termination, lauded her work and acknowledged he was unable to provide a rationale for her termination.

On September 18, 2024, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), complaining that she had been passed over for the Vice President of Enrollment Management position and demoted in January 2024 based on her age and sex, and charging, specifically, that she was replaced by a younger, less experienced and less qualified male.  She further complained that this same younger, less qualified male, had discharged her in March because of her age and gender.  Plaintiff filed the present action on January 7, 2025, after receiving an October 9, 2024 notice of right to sue.

2

In her original and first amended complaints, plaintiff asserted claims against JSU and against Thompson and Alford-Windfield in their official and individual capacities, for sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983 and for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, relating only to her demotion. Her second amended complaint, filed in response to a defense motion to dismiss, dropped Alford-Windfield as a defendant and added a claim that she was terminated because of her age, in violation of the ADEA.

Defendants' Motions

JSU and defendant Thompson, in his official capacity, argue in their motion to dismiss that (1) plaintiff's ADEA claims are barred by their Eleventh Amendment immunity; (2) the Eleventh Amendment also bars her § 1983 claim for money damages; (3) plaintiff failed to administratively exhaust her Title VII and ADEA claims relating to her demotion and her discharge, which claims are therefore barred; and (4) plaintiff has failed to state a plausible claim under Title VII or § 1983 for sex discrimination claim relating to her January 2024 non-selection/demotion.

In his separate motion to dismiss in his individual capacity, Thompson argues that any potential claims plaintiff may be attempting to assert against him individually under Title

3

VII or the ADEA must be dismissed because Title VII and ADEA do not provide any basis for individual liability for supervisory employees.  He further argues that he is entitled to qualified immunity on plaintiff's § 1983 sex discrimination claim, and that plaintiff has in any event failed to state a plausible claim against him for sex discrimination.

### Plaintiff's ADEA and Title VII Claims

Plaintiff's ADEA and Title VII claims against all the defendants are due to be dismissed.  Thompson plainly cannot be liable in his individual capacity under the ADEA or Title VII. See Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees, 709 F. App'x 243, 247 (5th Cir. 2017) (noting that "the ADEA provides no basis for individual liability for supervisory employees"); Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002) (holding that there is no individual liability for employees under Title VII).

Further, the Eleventh Amendment clearly bars plaintiff's ADEA claim for money damages against JSU and against Thompson in his official capacity.  See Ward v. Jackson State Univ., Civ. Act. No. 3:11CV188TSL–MTP, 2013 WL 75077, at *2 (S.D. Miss. Jan. 4, 2013) (finding that ADEA claim against JSU, and against Thompson in his official capacity, was foreclosed as a matter of law based on JSU's Eleventh Amendment immunity protections).

4

In the court's opinion, plaintiff's ADEA claim against Thompson in his official capacity for relief in the form of instatement to the position of either Vice President of Enrollment Management, which was given to Alford-Windfield, and her ADEA claim for instatement to the position of Executive Director of Admissions, from which she was discharged, would not be barred by the Eleventh Amendment.[1] See Mackey v. Pigott, Civ. Act. No. 3:23-CV-233-DPJ-FKB, 2023 WL 7663300, at *5 (S.D. Miss. Nov. 14, 2023) (concluding that Fifth Circuit would treat prayer for instatement like a claim for reinstatement, i.e., as prospective injunctive relief, which would fall within Ex parte Young exception); see also Tex. All. for Retired Ams. v. Scott, 8 F.4th 669, 671-72 (5th Cir. 2022) (explaining that Ex parte Young exception "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." (citing Ex parte Young, 209 U.S. 123, 155-57, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).[2] But

---

[1]    The Eleventh Amendment does not bar plaintiff's Title VII claims, although they fail for other reasons. See McLin v. Twenty-First Judicial District, 79 F.4th 411, 417 (5th Cir. 2023) ("Congress abrogated the states' Eleventh Amendment immunity for Title VII purposes." (citing Ussery v. State of La. on Behalf of La. Dep't of Health & Hosps., 150 F.3d 431, 434 (5th Cir. 1998)).

[2]    Plaintiff seeks front pay as an alternative to instatement, but "'the Eleventh Amendment bars [plaintiffs] from recovering ... front pay.'" Mackey v. Pigott, Civ. Act. No. 3:23-CV-233-DPJ-FKB, 2023 WL 7663300, at *5 (S.D. Miss. Nov. 14, 2023) (quoting Jones v. Texas Juvenile Justice Dept., 646 F. App'x

plaintiff's ADEA claims fail for another reason, as does her Title VII claim, namely, that she failed to timely exhaust her administrative remedies.[3]

An employee who wishes to sue for discrimination under Title VII or the ADEA must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(A) (ADEA); 42 U.S.C. § 2000e-5(e)(1) Title VII).  Plaintiff did not file a charge of discrimination within 180 days of her being passed over for Vice President of

---

374, 376–77 (5th Cir. 2016) (citing Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996))).

[3]    Thompson argues that even if plaintiff's claim for instatement falls within the Ex parte Young exception allowing for prospective injunctive relief, plaintiff cannot succeed on a claim for instatement since it is plain from the complaint that instating plaintiff would require removing an innocent person from the positions at issue.  In the court's view, however, the question whether instatement is feasible is properly left to later stages of the proceedings and would not be a basis for dismissal at this time.  See Muslow v. Bd. of Sup'rs. of Louisiana State Univ. and Agric. and Mech. College, Civ. Act. No. 19-11793, 2020 WL 1864876, at *5 (E.D. La. Apr. 14, 2020) (despite allegation that plaintiffs' former positions were retired or had been filled and no longer remained open, court concluded that "fact-intensive determination" of whether reinstatement was a feasible remedy was "more appropriately left to a later stage of the case" on a fully-developed evidentiary record); but see Jackson v. Duff, Civ. Act. Nos. 3:23-CV-3095-KHJ-MTP, 3:24-cv-00308-KHJ-MTP, 2025 WL 35981, at *5 (S.D. Miss. Jan. 6, 2025) (granting motion to dismiss claim for instatement because "[i]nstatement is not feasible when 'it would require the Court to bump an innocent person out of a job to accommodate Plaintiff.'" (quoting Lopez v. City of Biloxi, No. 1:03-CV-122, 2006 WL 839523, at *7 (S.D. Miss. Mar. 29, 2006)).

Enrollment Management/demotion to Executive Director of Admissions in January 2024 or her discharge in March 2024. Despite this, plaintiff argues that her charge as it related to her non-selection/demotion was timely based on the continuing violation doctrine, "which allows a complaint to be filed when 'the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period ....'" <u>Smith v. General Motors, L.L.C.</u>, No. 24-10841, 2025 WL 1693524, at *3 (5th Cir. June 17, 2025) (quoting <u>McGregor v. Louisiana State Univ. Bd. of Sup'rs.</u>, 3 F.3d 850, 866 (5th Cir. 1993)). The continuing violation doctrine, however, "applies only to acts that cannot be said to occur on any particular day," such as a hostile work environment, which occurs over time. <u>Id.</u> It does not apply to discrete acts that occurred on a particular date, such as a demotion or a discharge. <u>Id.</u> Her claims under the ADEA and Title VII relating to her demotion are clearly barred due to her failure to exhaust.

Plaintiff also did not file her EEOC charge within 180 days of her discharge; she filed her charge on day 181. Nevertheless, plaintiff submits that her ADEA claim is timely because on the date of her discharge, she was unaware that she was the victim of discrimination, and she only learned of the discrimination months later, in July, when JSU hired as her

replacement a woman more than twenty years younger than her.[4]
She thus claims that the 180-day period to file her EEOC charge
began on July 9, when her replacement was hired.  She is
mistaken.

     As stated, the charge of discrimination must be filed
within 180 days "after the alleged unlawful employment practice
occurred."  29 U.S.C. § 626(d)(1)(A).  The Supreme Court,
addressing the identical language in Title VII, has held that
"[a] discrete ... discriminatory act," such as a discharge, will
have "'occurred' on the day that it 'happened.'"  National R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061,
153 L. Ed. 2d 106 (2002).  "A party, therefore, must file a
charge within . . . 180 . . . days of the date of the act or
lose the ability to recover for it."  Id.

     Although mandatory, the limitations period on filing a
timely charge of employment discrimination is not jurisdictional
and therefore "is subject to equitable doctrines such as tolling
or estoppel."  Id. at 113, 122 S. Ct. 2061; Zipes v. Trans World
Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d
234 (1982).  These equitable doctrines, however, "are to be
applied sparingly."  Morgan, 536 U.S. at 113, 122 S. Ct. 2061;
see also Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir. 2002)

---

[4]    As plaintiff's replacement was a black female, she does not
assert a Title VII claim relating to her discharge.

(equitable exceptions apply only in "rare and exceptional circumstances").

The Fifth Circuit has identified "three potential bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 880 (5th Cir. 2003) (quoting Blumberg v. HCA Mgmt. Co., 848 F.2d 642, 644 (5th Cir. 1988)). Plaintiff does not contend that any of these circumstances applies here. In particular, she does claim that she lacked awareness of the facts supporting her claim until JSU hired a younger person as her replacement, but she does not suggest that defendant concealed facts from her. See Dent v. McDonough, No. 24-10446, 2025 WL 32817, at *3 (5th Cir. Jan. 26, 2025) (stating that "courts will consider tolling when a plaintiff demonstrates that a defendant employer's misconduct caused the plaintiff to fail to meet the deadline."); Bradford v. Louisiana State Univ. Med. Ctr., No. 96-31110, 1997 WL 680360, at *1 (5th Cir. Sept. 17, 1997) (concluding that equitable tolling was unavailable where plaintiff "had not alleged any misrepresentation on the part of the defendant which concealed her cause of action or

9

caused [her] to be misled as to when it was necessary to file her suit.").

It is notable, moreover, that at the time of her discharge, plaintiff believed she had been discriminated against because of her age when she was passed over just two months earlier for the Vice President of Enrollment Management position. Further, when she did file her charge of discrimination with the EEOC complaining of age discrimination relating to her discharge, she did not mention that she had been replaced by a younger individual; instead, she cited as evidence of age discrimination the fact that she had been discharged by a "younger, less experienced male," who "provided only notes of high praise and raving compliments of [her] talent and value and he shared that he had no rationale for [her] discharge." The content of her charge belies her present position that she only came to believe she was the victim of age discrimination upon learning she was replaced by a younger person.[5] In sum, the facts do not support

---

[5]    Even if it the alleged facts supported plaintiff's claim that she first became aware of the alleged discrimination when JSU hired her replacement, this occurred well within the 180-day limitation period, giving her ample time, with the exercise of diligence, to have filed her charge before the expiration of 180 days. Yet she failed to do this. See Henderson v. AT&T Corp., 933 F. Supp. 1326, 1334 (S.D. Tex. 1996) (holding that even if the limitations period should be tolled, application of equitable tolling does not automatically give a plaintiff the full limitations period to file her charge after learning she might have a claim; rather, the equitable tolling doctrine should be applied to toll the limitations period only for a

equitable tolling.  Plaintiff's charge was not timely filed and her claim for age discrimination based on her discharge will be dismissed.

    <u>Plaintiff's § 1983 Claim</u>

    Plaintiff has asserted a § 1983 claim based on her allegation that she was passed over for the position of Vice President of Enrollment Management and demoted to Executive Director of Admissions because of her sex, in violation of her Fourteenth Amendment equal protection rights.  Any such claim against JSU is barred by the Eleventh Amendment.  <u>See</u> <u>Dear v. Jackson State Univ.</u>, Civ. Act. No. 3:07–cv-407–WHB-LRA, 2008 WL 4225766, at *3 (S.D. Miss. Sept. 10, 2008) (stating that "the Eleventh Amendment bars suit against a state or 'state entity ..., regardless of whether money damages or injunctive relief is sought' and section 1983 does not override the Eleventh Amendment." (quoting <u>Briggs v. Miss.</u>, 331 F.3d 499, 503 (5th Cir. 2003)).  Likewise, any claim against Thompson in his official capacity for money damages is barred by the Eleventh Amendment.  <u>See</u> <u>Talley v. Jackson State Univ.</u>, Civ. Act. No. 3:24-CV-296-TSL-ASH, 2024 WL 3717059, at *2 (S.D. Miss. Aug. 1, 2024) (Eleventh Amendment bars official capacity suits against state officials for money damages).  As the court has previously

--------

reasonable time after the plaintiff learns she might have a claim).

opined, however, plaintiff's claim against Thompson in his official capacity for instatement to the position of Vice President of Enrollment Management falls within the Ex parte Young exception and therefore is not barred.  See supra p. 5-6. Nor does the Eleventh Amendment bar plaintiff's claim against Thompson in his individual capacity.  See Brown v. Hines, Civil Action No. 04-870-C-M2, 2005 WL 8155803, at *7 (M.D. La Sept. 22, 2005) (stating that "the Eleventh Amendment has no application when a plaintiff seeks money damages personally from a state officer and not from the public fisc.").

In his motion seeking dismissal of plaintiff's § 1983 claim against him in his individual capacity, Thompson argues this claim should be dismissed because he is entitled to qualified immunity and because plaintiff has failed to plead a plausible claim of sex discrimination.  In his official capacity motion, Thompson likewise contends plaintiff has failed to state a viable claim for sex discrimination.  In the court's opinion, however, plaintiff's allegations are sufficient to state a cognizable claim and to overcome Thompson's qualified immunity.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal."  Cope v. Cogdill, 3 F.4th 198, 204 (5th Cir. 2021).  This immunity applies when the defendant's conduct "does not violate clearly established

12

statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix v. Luna</u>, 577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Id.</u>

When qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" <u>Mackey</u>, 2023 WL 7663300, at *6 (quoting <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996)).  "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under [Section] 1983, and would overcome their qualified immunity defense." <u>Guerra v. Castillo</u>, 82 F.4th 278, 285 (5th Cir. 2023).  And a "good-faith assertion of qualified immunity" shifts the burden of proof to the plaintiff "to show that the defense is not available." <u>Trent v. Wade</u>, 776 F.3d 368, 376 (5th Cir. 2015).  "'[F]ailure to promote an employee based on their membership in a protected class was constitutionally proscribed at the time of the purported misconduct.'" <u>Jackson v. Duff</u>, Civil Action No. 3:23-CV-3095-KHJ-MTP, 3:24-cv-00308-KHJ-MTP2025 WL 35981, at *9 (S.D. Miss., Jan. 6, 2025) (quoting <u>Mackey</u>, 2023 WL 7663300, at *7).

To state a claim for sex discrimination, plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she was qualified and applied for the job; (3) the employer rejected her for the job despite her qualifications; and (4) a similarly situated applicant outside the protected class was hired. Chhim v. Univ. of Texas at Austin, 836 F.3d 467, 470 (5th Cir. 2016). Thompson maintains that while plaintiff has alleged Alford-Windfield was less qualified than her for the position of Vice President of Enrollment Management, she has failed to adequately allege facts in support of this conclusory allegation, and in particular, she has not sufficiently alleged facts regarding either Alford-Windfield's own respective qualifications or the required qualifications for the position of Vice President of Enrollment Management.[6]

---

[6] Plaintiff has clearly alleged the remaining elements of her prima facie case. She is female, and was qualified for the position; and while she does not allege that she applied for the position, she does allege that the position was not posted and that she had expressly informed Thompson of her interest in the position shortly before he hired Alford-Windfield, which is sufficient to satisfy the third prong. See Jackson v. Duff, Civ. Action Nos. 3:23-CV-3095-KHJ-MTP, 3:24-cv-00308-KHJ-MTP, 2025 WL 35981, at *8 (S.D. Miss. Jan. 6, 2025) ("'To be sure, when an employer does not publish a vacancy *or* create a formal application process, a plaintiff need not prove that she applied for the position in order to make out a prima facie case of discrimination.' In such cases, 'a plaintiff may satisfy her prima facie burden by proffering evidence that the company had some reason or duty to consider her for the post.'" (quoting Everett v. Mississippi, No. 03-61073, 106 F. App'x 264, 266 (5th Cir. July 30, 2004) (per curiam) (emphasis added)).

According to plaintiff's allegations, she has a bachelor's and master's degree. Prior to her non-selection as Vice President of Enrollment Management, she had worked for JSU for nearly twenty-five years. In 2022, she was selected over Alford-Windfield for the position as Executive Director of Admissions, a position which is under the supervision of the Vice President of Enrollment Management, which strongly tends to show that JSU considered her the better qualified candidate. She was selected in August 2023 as Interim Vice President of Enrollment Management and performed exceptionally well in that position. In fact, Thompson extolled her performance as Interim Vice President of Enrollment Management when he removed her from the interim position and installed Alford-Windfield as Vice President of Enrollment Management.

Plaintiff alleges that in stark contrast to her qualifications, experience and outstanding performance, including in the position at issue, Alford-Windfield had a mere five years' experience in higher education in four positions at three colleges (Mississippi Valley State University, as well as Stillman and Rust Colleges), and had been relatively recently rejected for a related position at JSU for which plaintiff was selected. In the court's opinion, these allegations are

sufficient to state a claim for sex discrimination and to overcome Thompson's qualified immunity.

Conclusion

Based on the foregoing, it is ordered that plaintiff's claims under the ADEA for age discrimination and under Title VII for sex discrimination are dismissed. It is further ordered that plaintiff's § 1983 claim against JSU for sex discrimination is dismissed, as is her § 1983 claim for money damages against Thopmson in his official capacity. Lastly, it is ordered that Thompson's motion to dismiss plaintiff's § 1983 claim against him in his individual capacity is denied, as is his motion to dismiss her § 1983 claim against him in his official capacity for instatement to the position of Vice President of the Division of Enrollment Management.

SO ORDERED this 28th day of August, 2025.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE